UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                                                    :        Chapter 7

DENNIS DRYDEN ANTONIOUS and          :
PEGGY ANN ANTONIOUS
      Debtors                                           :        Bankruptcy No. 05-18809bif

................................................

MEMORANDUM

................................................

      The former chapter 7 debtors, Dennis and Peggy Ann Antonious, have filed a motion to reopen their closed chapter 7 bankruptcy case, pursuant to 11 U.S.C. § 350(b), solely in order to "accord relief to the co-Debtor, Peggy Ann Antonious." See Motion, Introductory Paragraph. Mrs. Antonious contends that creditors Bryon and Mayolia Stevens have taken actions that violate the discharge injunction found in 11 U.S.C. § 524(a), by attempting to garnish a bank account titled in her name to satisfy a judgment obtained against her husband. The Stevenses oppose the motion to reopen, contending that they did not violate the discharge injunction. The United States trustee takes no position.

      A hearing was held on the motion to reopen only, at which time the parties did not offer any evidence. However, from the exhibits attached to their submissions, and from the arguments of counsel, the following facts do not appear controverted.

I.

The debtors filed a voluntary petition under chapter 7 on June 27, 2005.[1] During the pendency of the debtors' bankruptcy case, the Stevenses commenced an adversary proceeding seeking a determination that their pending state court claims against both debtors were nondischargeable under 11 U.S.C. § 523(a)(2) and (a)(6). The Stevenses alleged that the debtors obtained substantial funds from them through fraud, misrepresentations, false pretenses, and willful and malicious conduct in connection with a home repair project. A prepetition state court civil action against the debtors, brought by the Stevenses in the Chester County Court of Common Pleas, had been stayed by the Antoniouses' bankruptcy filing, and could only continue if this court found the claims nondischargeable as to one or both of the debtors.

After trial, by memorandum and order dated November 27, 2006, I found the Stevenses' claims nondischargeable as to Mr. Antonious under section 523(a)(2)(A), but dischargeable as to Mrs. Antonious. See In re Antonious, 358 B.R. 172 (Bankr. E.D. Pa. 2006). Among the factual findings then made was the following:

> 22. Neither Mr. Antonious nor his fictitious entity have a bank account. Statement of Uncontested Facts, #7. The Internal Revenue Service contends that Mr. Antonious owes back taxes and has made efforts to collect its debt. N.T. at 10:47. Fearing that the IRS would garnish his bank account, Mr. Antonious uses Mrs. Antonious' personal bank account

---

[1] I may take judicial notice, under Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017), of the information on the court dockets in this case, as well as the memorandum and order issued by this court on November 27, 2006. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n.19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

> for all of his business transactions and has done so for a
> number of years. Statement of Uncontested Facts, #7. In
> order to use this account, Mr. Antonious, with his wife's
> consent, has access to a stamp reflecting a copy of Mrs.
> Antonious' signature. N.T. at 10:12-13. He uses this stamp
> to endorse checks made payable to him in connection with
> Your Small Job Specialists. N.T. 10:12-13.

Id., at 179.

Prior to the resolution of the Stevenses' adversary proceeding, the chapter 7 trustee had submitted a report stating that, after investigation, the trustee had located no non-exempt assets to administer for the benefit of creditors. See Docket entry dated January 31, 2006. As there had been no challenge to the entry of a chapter 7 discharge as to either debtor, on March 14, 2006 a discharge order in favor of both debtors was entered. After the dischargeability adversary proceeding had been adjudicated, the chapter 7 case was closed under 11 U.S.C. § 350(a) on December 27, 2006.

Upon the closing of the bankruptcy case the automatic stay terminated under 11 U.S.C. § 362(c)(2)(A), and the Stevenses' prepetition state court litigation resumed as to Mr. Antonious. On March 14, 2007, the Stevenses and Mr. Antonious entered into an agreement by which the Stevenses obtained a judgment against Mr. Antonious, by consent, in the amount of $45,000. Moreover, the Stevenses agreed to dismiss their state court claims against Mrs. Antonious, as those claims had been discharged. Motion, Ex. A.

On April 27, 2007, the Stevenses requested that the Prothonotary of the Court of Common Pleas of Chester County, Pennsylvania, issue a writ of garnishment to the Sheriff of Chester County to be served upon Citizens Bank, so as to attach all bank accounts "that exit [sic] under the name of Dennis Antonious and/or Peggy [Anton]ious,

but not limited to, [sic] account number 64005\*\*\*."[2] Motion, Ex. B. The Prothonotary issued such a writ and the sheriff duly served it. Id.

Although the exhibits do not so reveal, from the arguments of counsel, it is likely that upon service of the garnishment writ Citizen's Bank froze a bank account titled in the name of Peggy Ann Antonious only. At the hearing in this court on the motion to reopen, counsel stated that there was $43 in that account. After notice of the attachment, Mrs. Antonious filed a claim with the Sheriff of Chester County, asserting that all funds in that account belonged to her and were exempt from attachment or garnishment based upon a judgment against her husband only.

An emergency hearing was held before Hon. Phyllis R. Streitel of the Court of Common Pleas, Chester County, on May 16, 2007. At that hearing, the Stevenses "acknowledge[d] that they are not entitled to execute and levy upon the assets of Peggy Antonious. However, they argue[d] that the funds in Peggy Antonious' account are actually those of Dennis Antonious deposited into the account as part of a fraudulent scheme." Memorandum Opinion of Judge Streitel, dated June 15, 2007 (Response, Ex. A, at 3). Judge Streitel held that, "[w]hile at first blush it appears that there could be some merit to [the Stevenses'] claim," under Pennsylvania law garnishment proceedings could not be used to determine whether a fraudulent transfer had occurred, and that the Stevenses were required to "commence a separate, equitable action under the Fraudulent Conveyances Act." Id., at 3. Insofar as it was conceded that the property sought to be

---

[2] For privacy purposes, I have redacted the ending digits of this bank account.

4

garnished was in the name of Mrs. Antonious only, the state court quashed the garnishment as to Mrs. Antonious's accounts. Id., at 4-5.[3]

Prior to the state court's adjudication on June 15, 2007, the former debtors filed the instant motion to reopen their bankruptcy case on June 1, 2007, amended on June 6th. As of the date of the hearing on the motion to reopen, no litigation was pending against Mrs. Antonious brought by the Stevenses.

II.

Pursuant to section 350(b), "a [closed bankruptcy] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor or for other cause." Whether to reopen a closed bankruptcy case is committed to the discretion of the bankruptcy court. See, e.g., Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir. 1997); Judd v. Wolfe, 78 F.3d 110, 116 (3d Cir. 1996); Matter of Case, 937 F.2d 1014, 1018 (5th Cir. 1991) ("This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy court proceedings."); Hawkins v. Landmark Finance Co., 727 F.2d 324 (4th Cir. 1984); Matter of Becker's Motor Transportation, Inc., 632 F.2d 242, 245 (3d Cir. 1980); Urbanco, Inc. v. Urban Systems Streetscape, Inc., 111 B.R. 134 (W.D. Mich. 1990). The burden of demonstrating circumstances sufficient to justify the reopening is placed upon the moving

---

[3]The state court also decided that as Mrs. Antonious was no longer a defendant in the state court litigation, she could not raise an exemption claim and so dismissed and denied that claim. Id., at 4-5.

party. See In re Cloninger, 209 B.R. 125, 126 (Bankr. E.D. Ark. 1997); In re Nelson, 100 B.R. 905 (Bankr. N.D. Ohio 1989).

In general, when a former debtor seeks to reopen a closed bankruptcy case,[4] the court should consider a variety of non-exclusive factors including: the length of time that the case has been closed, see Matter of Case, 937 F.2d at 1018; whether a non-bankruptcy forum, such as state court, has the ability to determine the dispute to be posed by the debtor were the case reopened, see, e.g. In re Tinsley, 98 B.R. 791 (Bankr. S.D. Ohio 1989); In re E.A. Adams, Inc., 29 B.R. 227 (Bankr. D.R.I. 1983); In re Hepburn, 27 B.R. 135 (Bankr. E.D.N.Y. 1983); whether prior litigation in bankruptcy court implicitly determined that the state court would be the appropriate forum to determine the rights, post-bankruptcy, of the parties; whether any parties would be prejudiced were the case reopened or not reopened; the extent of the benefit which the debtor seeks to achieve by reopening; and whether it is clear at the outset that the debtor would not be entitled to any relief if the case were reopened. See generally Arleaux v. Arleaux, 210 B.R. 148, 149 (B.A.P. 8th Cir. 1997); In re Carberry, 186 B.R. 401, 402 (Bankr. E.D. Va. 1995) (a bankruptcy court "should not reopen a bankruptcy case where it appears that to do so would be futile and a waste of judicial resources"); In re Nelson, 100 B.R. 905, 907 (Bankr. N.D. Ohio 1989):

> [T]he court will not grant a motion to reopen when no clear benefit is shown to creditors. . . . Because no benefit will

---

[4] When a creditor or trustee seeks to reopen a closed case, "[i]t is well-recognized that a bankruptcy proceeding may be reopened to administer estate assets and to determine whether additional assets may be available for creditors of the estate." In re Zinchiak, 406 F.3d 214, 224 (3d Cir. 2005).

> inure to Debtors' estate or their creditors, Debtors' motion
> should be denied.

In this contested matter, the debtors seek to reopen this case solely to obtain a bankruptcy forum to adjudicate a civil contempt claim by Mrs. Antonious against the Stevenses for allegedly violating the provisions of 11 U.S.C. § 524(a)(2) enjoining creditors from attempting to collect or recover a discharged debt. See generally Kuhl v. U.S., 467 F.3d 145, 147 (2d Cir. 2006) ("A discharge in bankruptcy operates as an injunction against collection of any discharged debts."). However, section 524(a)(2) expressly states that the injunction against creditor post-discharge collection activity is limited to the "personal liability of the debtor[.]" See, e.g., Matter of Paeplow, 972 F.2d 730, 733 (7th Cir. 1992) ("§ 524 provides that discharge enjoins any former creditors from commencing any action to collect a 'personal liability' of the debtor"). Thus, to the extent that a creditor seeks in rem relief, no violation of the discharge injunction occurs. See, e.g., Johnson v. Home State Bank, 501 U.S. 78, 83 (1991); In re Factor, 2007 WL 2128309 (3d Cir. 2007).

Furthermore, the provisions of 11 U.S.C. § 727(b) limit the scope of a chapter 7 discharge to "debts that arose before the date of the order for relief under this chapter[.]" Generally, claims that arise after the commencement of a chapter 7 case will not be discharged. See, e.g., Hazelquist v. Guchi Moochie Tackle Co., Inc., 437 F.3d 1178, 1180 (Fed. Cir. 2006) ("Thus, a discharge in bankruptcy operates as an injunction against a plaintiff asserting a claim for a debt incurred, or a cause of action that arose, before the date of bankruptcy discharge. It does not act as an injunction against a plaintiff asserting a claim for a debt incurred, or a cause of action that arose, after the date of bankruptcy discharge."); Judd v. Wolfe, 78 F.3d 110, 113-14 (3d Cir. 1996) ("every

7

prepetition debt is discharged under section 727(b) subject to the provisions of section 523(a)[]').

Although a bankruptcy court may reopen a closed case so as to hear litigation seeking to enforce the discharge injunction, see, e.g., In re Fluke, 305 B.R. 635 (Bankr. D. Del. 2004); In re Brabham, 184 B.R. 476 (Bankr. D.S.C. 1995), it has the discretion not to do so.[5]  See generally In re Apex Oil Co. Inc., 406 F.3d 538, 542-43 (8th Cir. 2005) (affirming the denial of a debtor's motion to reopen a closed bankruptcy case as state court was competent to interpret the scope of the debtor's chapter 11 discharge). Enforcement of the discharge injunction can be obtained in the Pennsylvania state court system.  See, e.g., Cohen v. Goldberg, 554 Pa. 201 (1998); Hogg v. Hogg, 816 A.2d 314, 319-20 (Pa. Super. 2003); Birdman v. Medley, 261 Pa. Super. 23 (1978); see generally Pa. R. Civ. P. 1030 (discharge is an affirmative defense which may be raised in state court civil litigation).

In deciding the proper exercise of discretion in this contested matter, I also note that, unlike the automatic stay which may be enforced through section 362(h), Congress has not provided a statutory mechanism for the enforcement of the discharge injunction.  Therefore, courts have long relied upon the common law remedy of civil

---

[5]A bankruptcy court has no jurisdiction over a dispute filed after a case is closed until it is reopened, because the outcome of that dispute can not possibly have an effect upon the administration of the closed case.  See Cook v. Chrysler Credit Corp., 174 B.R. 321, 327 (M.D. Ala. 1994); Walnut Associates v. Saidel, 164 B.R. 487, 491 (E.D. Pa. 1994); In re Brantley, 1997 WL 74663, at *1 (Bankr. W.D. Ark. 1997) (holding that an adversary proceeding filed after a debtor was discharged and the bankruptcy case was closed is improper); In re Cassidy, 1995 WL 661244, at *3 (Bankr. N.D. Ga. 1995).  Thus, it is necessary to reopen this case were the former debtors to bring an action in this court against the Stevenses for violating the discharge injunction.  See generally In re Kiker, 98 B.R. 103, 104 (Bankr. N.D. Ga. 1988) (motion to reopen case was granted so that court could determine whether section 524(a) had been violated).

8

contempt. See, e.g., Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002); Matter of National Gypsum Co., 118 F.3d 1056, 1063 (5th Cir. 1997); Matter of Rosteck, 899 F.2d 694 (7th Cir. 1990); Bynum v. Cavalry Portfolio Services, L.L.C., 2006 WL 1401619, at *2 (N.D. Okla. 2006); In re Elias, 98 B.R. 332 (N.D. Ill. 1989); In re McNeil, 128 B.R. 603, 607 (Bankr. E.D. Pa. 1991) ("Enforcement of § 524 may include holding violators in contempt of court for attempts to collect discharged debts."); In re Wagner, 87 B.R. 612 (Bankr. C.D. Cal. 1988).

III.

While the motion to reopen this chapter 7 case was pending, the state court quashed the Stevenses' attachment of Mrs. Antonious's bank account. Thus, Mrs. Antonious no longer needs such equitable relief from this court. The award of compensatory damages as a civil contempt remedy is not mandatory and must be based upon a showing of actual damages. See Hartman v. Lyng, 884 F.2d 1103 (8th Cir. 1989) (contempt found but no damages awarded). Given the small amount involved, it is unlikely that Mrs. Antonious suffered measurable damages from the attachment.

Moreover, while I appreciate that a federal court may assess attorney's fees as part of a civil contempt sanction, see, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 53-54 (1991); Robin Woods Inc. v. Woods, 28 F.3d 396, 400 (3d Cir. 1994), and so reasonable counsel fees can be awarded as part of a discharge enforcement order, see, e.g., In re McNeil, 128 B.R. 603, 615 (Bankr. E.D. Pa. 1991), it is unlikely that such relief would be accorded when the dispute involved only a $43 bank account, and the

9

state court had previously concluded that there was some merit to the Stevenses' claims. See generally LeMaster v. Bull, 581 F. Supp. 1170, 1174 (E.D. Pa. 1984) ("It is well settled in this circuit that 'in a contempt proceeding, the court may, in its discretion, award expenses, costs, and fees to the petitioner. These items are restricted to reasonable amounts incurred in prosecuting the petition.'") (quoting Lichtenstein v. Lichtenstein, 425 F.2d 1111 (3d Cir. 1970)); cf. In re University Medical Center, 973 F.2d 1065, 1088 (3d Cir. 1992) (court declines to award counsel fees for willful violation of the bankruptcy stay when the creditor's actions had some legal justification).

Thus, it does not seem appropriate to reopen this chapter 7 case to afford the former debtor retroactive relief. Rather, from the arguments of counsel, the primary concern seems to involve prospective injunctive relief. Mrs. Antonious fears that the Stevenses will accept the state court's invitation to commence a fraudulent conveyance action against her, an action she believes would violate the section 524(a) injunction. The Stevenses counter that such future litigation would not violate Mrs. Antonious's discharge.

Were a chapter 7 debtor to move for a bankruptcy court to enjoin a creditor to obey the discharge injunction, such a request would be non-justiciable unless there is sufficient evidence that the creditor has or is about to violate that injunction. See generally In re Jacobs, 149 B.R. 983, 993 (Bankr. N.D. Okla. 1993) (injunctive relief is warranted where an administrative order to show cause was issued); cf. In re Richardson, 15 B.R. 925, 928 (Bankr. E.D. Pa. 1981) (dispute under section 525 was ripe due to imminent action by defendant), vacated in part, 27 B.R. 560 (E.D. Pa. 1982). In this

10

instance, I shall accept arguendo Mrs. Antonious's argument that the threat of litigation against her is real and imminent.

Mrs. Antonious maintains that a fraudulent transfer lawsuit against her would violate section 524(a)(2). However, as noted earlier, a creditor does not violate section 524(a) by bringing an in rem action against a former debtor. Nor is the discharge injunction violated if the creditor names the former debtor as a defendant, but only seeks relief against a third party. See Matter of Edgeworth, 993 F.2d 51 (5th Cir. 1993) (post-discharge suit against the debtor is permissible when creditor/plaintiff seeks only to recover from insurance proceeds); Taff v. Baker, 861 P.2d 341 (Okla. Ct. App. 1993) (same). Furthermore, to the extent that Mrs. Antonious received a fraudulent transfer after June 27, 2005—the date her chapter 7 petition was filed—any claim arising from that transfer would not have been discharged. Cf. In re Hermosilla, 2007 WL 1169175 (Bankr. D. Mass. 2007) (sanction that was imposed postpetition was not discharged).

There are reported decisions from non-Pennsylvania jurisdictions holding that the discharge of the transferor does not bar a fraudulent transfer action against the non-debtor transferee. See Roberson v. Johnson, 950 So.2d 317 (Ala. Civ. App. 2006); Farmers Plant Aid, Inc. v. Fedder, 999 P.2d 315, 318 (Mont. Sup. 2000) (action against debtor and non-debtor wife/transferee was permissible); Dixon v. Bennett, 72 Md. App. 620, 637 (1987). Those decisions are premised upon the principle that the bankruptcy discharge runs only in favor of the transferor, not the transferee. See 11 U.S.C. § 524(e). Whether a fraudulent transfer suit is permissible when it is the transferee who has received a bankruptcy discharge may depend upon the nature of the relief sought and the timing of the transfer. Because a fraudulent transfer lawsuit may yield relief that is not in

11

rem, see Fleet Nat'l Bank v. Carswell, 2005 WL 589790 (Conn. Super. 2005), such a post-discharge claim may violate section 524(a) if it involved a pre-bankruptcy claim. Conversely, a solely in rem action involving the discharged debtor would not. See In re Palumbo, 353 B.R. 37, 41-42 (Bankr. D. Mass. 2006) (discharge of transferee does not bar transfer avoidance action under sections 544 and 550 of the Bankruptcy Code because action relies on court's in rem jurisdiction; discharge only relieved debtor of personal liability); cf. In re Abbott, 183 B.R. 198 (B.A.P. 9th Cir. 1995) (debtor's spouse had no standing to oppose trustee's motion to reopen bankruptcy case to file fraudulent transfer action against wife as transferee, because her property rights would be unaffected). Nor would a civil action based upon a post-bankruptcy transfer violate the discharge injunction.

Whether, under Pennsylvania state law, a civil action under Pennsylvania's Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. C.S.A. §§ 5101, et seq., against Mrs. Antonious could be limited to only in rem relief under the remedy section, 12 Pa. C.S.A. § 5107, and therefore not violate the discharge injunction, is an issue better left to the state court system, which has the jurisdiction to resolve that issue and has greater expertise in construing state law. See generally In re Baker, 188 B.R. 38, 40 (Bankr. E.D. Okla. 1995). It would appear, though, that section 5107 of PUFTA affords both in rem and in personam relief against a transferee. See Castagna v. Castagna, 1995 WL 225473, at *9 (Conn. Super. 1995).

Moreover, a state court could readily determine whether any future fraudulent transfer action brought by the Stevenses against Mrs. Antonious stemmed from

a transfer she received prior to June 27, 2005. If so, the former debtor's bankruptcy rights under section 524 could be asserted.

Since the Pennsylvania state courts have the power to enforce Mrs. Antonious's bankruptcy discharge, and because they alone could hear a fraudulent transfer suit brought by the Stevenses—the chapter 7 trustee, when the case was closed, abandoned all interest in estate property by virtue of section 554(c)—the better exercise of discretion is to deny the present motion. If the Stevenses should act in the future in a manner that Mrs. Antonious believes violates her discharge rights, the state court is fully capable to protect her interests.

An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| DENNIS DRYDEN ANTONIOUS and PEGGY ANN ANTONIOUS | : | |
| Debtors | : | Bankruptcy No. 05-18809bif |

................................................

ORDER

................................................

AND NOW, this 7th day of August 2007, for the reasons stated in the accompanying memorandum, it is hereby ordered that the debtors' motion to reopen this closed chapter 7 bankruptcy case pursuant to 11 U.S.C. § 350(b) is denied.

BRUCE FOX
United States Bankruptcy Judge

copies to:

Mr. Dennis Dryden Antonious
Mrs. Peggy Ann Antonious
419 Harry Road
Coatesville, PA 19320

Mr. Dennis Dryden Antonious
Mrs. Peggy Ann Antonious
124 Hedgerow Lane
West Chester, PA 19380

Mark Blank, Jr., Esq.
50 Darby Road
Paoli, PA 19301

Jonathan P. Boughrum, Esq.
Montgomery, McCracken Walker & Rhoads, LLP
1235 Westlakes Drive, Suite 200
Berwyn, PA 19312